OPINION OF THE JUSTICES OF THE SUPREME JUDICIAL COURT ON THE QUESTION, WHETHER PERSONS, WHOSE TAXES ARE ABATED, OR WHO ARE EXEMPTED FROM TAXATION, ON ACCOUNT OF AGE, INFIRMITY, OR POVERTY, ARE CITIZENS EXEMPTED BY LAW FROM TAXATION, WITHIN THE MEANING OF THE THIRD ARTICLE OF THE AMENDMENTS TO THE CONSTITUTION.

The word "paupers" has acquired a precise and technical meaning, and is understood to designate persons receiving aid and assistance from the public, under the provisions made by law for the support and maintenance of the poor.

Persons whose taxes, "by reason of age, infirmity, or poverty," are abated, or who, for those reasons, are omitted to be taxed, by the assessors, are not "citizens exempted by law from taxation," within the intention of the 3d article of the amendments to the constitution ; and, therefore, are not entitled to vote without paying taxes.

Assessors have no authority, under the tax acts, arbitrarily to exclude aged and poor persons from the right of voting, by an omission or abatement of their taxes. Such omission or abatement must be with the consent, expressed or implied, of the person who is omitted to be taxed, or whose tax is abated.

If such persons have, in fact, paid no tax, assessed within two years next preceding any election, they are not entitled to vote therein, though such non-payment is occasioned by an exemption or abatement, under the discretionary authority of the assessors.

But if they have paid any tax, assessed within two years previous, they are entitled to vote in any election for governor, lieutenant-governor, senators, and representatives.

IN the senate, on the eighth of February, 1832, it was

Ordered, That the justices of the supreme judicial court be requested, as soon as may be convenient, to give their opinion on the following question :—

Whether those persons, who are exempted from taxation by town assessors, under the authority given them in the following clause in the usual tax acts of the commonwealth :—" And if there be any persons, who, by reason of age, infirmity, or poverty, may be unable to contribute towards the public charges, in the judgment of the said assessors, respectively, they may exempt the polls and estates of such persons, or abate any part of what they are assessed, as the said assessors may deem just and equitable,"—and who have the requisite qualifications as to age and residence, are entitled to vote for

governor, lieutenant-governor, senators, and representatives, under the third article of the amendments to the constitution.

On the thirteenth, the following opinion of a majority of the court, (Mr. Justice Morton being absent) was received by the president, and by him laid before the senate :—

" The third article of the amendments to the constitution of the commonwealth, upon which the question arises, is as follows, viz :—Every male citizen of twenty-one years of age and upwards, (excepting paupers, and persons under guardianship) who shall have resided within the commonwealth one year, and within the town or district, in which he may claim a right to vote, six calendar months, next preceding any election of governor, lieutenant-governor, senators, or representatives, and who shall have paid, by himself or his parent, master or guardian, any state or county tax, which shall, within two years next preceding such election, have been assessed upon him, in any town or district of this commonwealth, and also every citizen who shall be by law exempted from taxation, and who shall be, in all other respects qualified as aforementioned, shall have a right to vote, in such election of governor, lieutenant-governor, senators and representatives; and no other person shall be entitled to vote in such elections.'

This question appears to us to involve three distinct points, on subjects of inquiry arising from as many distinct clauses or provisions of the constitutional article cited.

1. Whether, the persons described, who may be exempted from taxation, or whose taxes, may be abated under the discretionary authority given to the assessors by the tax act, are " paupers" within the meaning of the exception.

2. Whether they are by law exempted from taxation, so as to give them the political privilege of voting without being assessed to any tax.

3. Whether, not being paupers, and being liable to be taxed, or in fact assessed, though such tax be omitted, or abated under the discretionary authority of the assessors, they are to stand upon the same footing in regard to the privilege of

voting as if they had been regularly assessed, and had actually paid a tax.

1. In a certain loose and indefinite sense, the persons in question may be called paupers. The case supposes them to be poor, and in consequence thereof, to be unable to contribute towards the public charges. But we are of opinion, that this is not the sense in which the word is intended in the constitution. Long before the adoption of the article in question, the word "paupers" had acquired a precise and technical meaning, and was understood to designate persons receiving aid and assistance from the public, under the provisions made by law for the support and maintenance of the poor. Such provisions had been made, both in England and in this country, long before the adoption of this article, or of the original constitution. Besides, if it were intended to be understood in a more general sense, and as extending to all poor persons, it might go to exclude those from voting, whose poverty might be manifested in other modes than the one set forth in the extract from the tax act. Considering how important it has always been regarded in the framing of fundamental laws, upon which the essential civil and political rights and privileges of the subject mainly depend, that words should be used in a sense as exact and definite as the nature of language will permit, and how careful the framers of our constitution have been in the observance of this rule; and considering upon how indefinite and uncertain a basis, the important right of voting would have stood, had the word paupers been used in any other than the exact and technical sense which we have ascribed to it, our opinion is confirmed, that it was intended to be confined to persons claiming assistance for themselves or families, from the provision made by law for the poor.

2. The next inquiry is, whether the persons described can be considered as persons exempted by law from taxation, within the meaning of the constitutional provision in question.

Here, as in the other case, in a certain loose sense, they may be said to be exempted by law, because the authority is given by law to the assessors, and when executed, it is by force of

the law, that the exemption takes effect. But we are of opinion, that this is not the true construction of the clause, but that it means to designate those persons, who, by the terms of the act itself, are exempted, and where nothing more is necessary to give effect to the exemption, than for the person entitled to the benefit of it, to show that he comes within its terms.

Whether we regard the terms of the law imposing the tax, or the probable and obvious intent and design of the constitution, we think there will be discovered a broad and well defined distinction, between those exempted from taxation, by law, and those exempted, by reason of poverty and inability, under the discretionary authority given to assessors.

It had long been the practice in this commonwealth, in the assessment of taxes, to exempt certain persons, in terms, whose pursuits and employments were devoted to the public service, and who, in effect, must be supported at the public charge, such as settled ministers, officers and professors of colleges, preceptors and masters of public schools and academies. These persons were exempted, not on the ground of inability to contribute to the public charges, but because, as they labor wholly or chiefly, for the public, and are entitled to a support from the public, the exemption from taxation is only one means of contributing to their support; and, if they were held liable to pay any tax, their compensation for services ought justly to be enlarged in the same proportion, out of some other public fund. Such persons therefore do, in effect, contribute their share to the public charges; though they do it by their services, instead of a money rate.

In the tax acts, containing the clause recited in the order of the honorable senate, the act first provides for the absolute exemption of ministers of the gospel, the president and professors of colleges, and others specially enumerated, and then, in the same section, proceeds to vest a discretionary authority in the assessors, to exempt those, who, through age, infirmity or poverty may be unable to contribute. Thus the act makes a strong and marked distinction between the two classes of per-

sons.   The same conclusion results from the constitutional article in question, which puts those who are exempted by law exactly upon the same footing with those who actually pay taxes, in regard to the privilege of voting.   We think this provision manifestly had reference to the old and uniform practice of exempting these classes of public servants from taxation, upon the grounds above stated, that these were the persons designated by the description "citizens exempted by law from taxation," and that it can by no reasonable construction extend to those, who, at the discretion of the assessors, may be exempted on account of poverty or inability.

3. The remaining inquiry is, whether persons thus liable to be assessed, though in fact exempted, by the assessors, are entitled to the privileges of voters.

We are of opinion, that when such exemption has extended to two years they are not.   We think it was the plain intent of this clause of the amendment of the constitution, to give practical force and effect to the maxim, that taxation and representation should go together; and to secure the right of electing those, who are to administer the government, to those who in fact contribute to its support.   It confines the power therefore, in terms, to those who shall have paid some tax assessed within a short period preceding the election and for the sake of exactness fixes that period at two years.   If therefore the persons in question have been exempted, for two entire years, either by being omitted in the assessment, or by the abatement of the tax, by the assessors, such persons are excluded by the plain terms and manifest intent of the constitution.   But if such exemption has not extended to two years, and if the persons in question have paid any tax assessed within two years, although exempted the last year, such persons have a right to vote, coming within the terms of the constitution, and not being excepted as paupers.

It may be objected to this construction, that, consistently with it, aged and poor persons may be arbitrarily excluded from the right of voting, by the assessors, by the omission or abatement of their taxes.

37

But we think the tax act will not justly admit of this construction.   It must be considered, that the liability to taxation, and the political privilege of voting, consequent thereon, are established by different acts, at distant periods, and having distinct objects in view.   Each must be construed by itself. The purpose of the tax act is revenue; it is to lay a burthen and charge upon the persons and property of the people, to provide funds for public objects.   The privilege of voting, consequent thereon, is incidental and collateral, established by a distinct constitutional provision, and is not to be regarded as one of the purposes and designed effects of the act.   Such effect, therefore, cannot be much  regarded in its construction. The direct object of the act being to raise a revenue, by laying a tax and burthen upon the  people, an exemption from such burthen must be regarded as a benefit conferred on those entitled to it.   It is a general rule of law, that what is intended for one's benefit, he may claim or waive, at his election, and this rule applies with increased force, when other and incidental consequences, important to himself, depend upon such election.   So when a grant or bequest is made to one, being apparently for his benefit, he may accept or waive it; this right is of the higher importance, where such grant or bequest is made upon some trust attended with responsibility, or upon other onerous conditions.   So we think the exemption in question was intended as a benefit to those who by reason of age, infirmity, or poverty, are unable to contribute, and one which if they so elect, they may waive, and in such case, it would not be in the power of the assessors to omit them in the assessment, or abate their taxes, against their consent, with a view either to affect their elective franchise, or for any other purpose.   The language of the act is, that the assessors may exempt; which implies, we think, that it is to be done, with their consent, express or implied.   It is true, that the word "may," is sometimes construed as imperative, and equivalent to "shall;" but it is only where the context and general purpose of the act or instrument manifestly require it.   Here we think the context and general objects of the act require a dif-

ferent construction, and imply that the word "may" was used in its ordinary sense, as permissive, granting power to the assessors to allow the exemption, at the election of those entitled to the benefit of it.

On the whole, our opinion is, that the persons in question are not excluded from the right of voting as paupers; that they are not entitled to vote, without paying taxes, as citizens exempted by law from taxation; and that if they have actually paid no tax, assessed within two years next preceding such election, though such non-payment was occasioned by an exemption or abatement, under the discretionary authority of the assessors, such persons are not entitled to vote; but that if they have in fact paid any tax assessed within two years previous, they are entitled to vote in any election for governor, lieutenant-governor, senators, and representatives.

LEMUEL SHAW,
SAMUEL PUTNAM,
S. S. WILDE.

*February* 14, 1832.

## 1833.

### COMMITTEE ON ELECTIONS.

Messrs. *Samuel M. McKay*, of Pittsfield, *Samuel Merrill*, of Andover, *Otis Everett*, of Boston, *George W. Heard*, of Ipswich, *Benjamin Thompson*, of Charlestown.